**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**AT PIKEVILLE**

CIVIL ACTION NO. 21-94-DLB

ROBYN ADAMS-ROSALES                                               PLAINTIFF

v.                        **MEMORANDUM ORDER**

RIVERDALE CLAIMS MANAGEMENT, LLC, et al.              DEFENDANTS

*** *** *** ***

This matter is before the Court upon Plaintiff Robyn Adams-Rosales's Motion to Remand this case to Floyd County Circuit Court (Doc. # 23), where it was originally filed, and Adams-Rosales's Motion to Stay ruling on Defendant Phillips, Parker, Orberson & Arnett, P.L.C.'s Motion to Dismiss prior to an order adjudicating Plaintiff's Motion to Remand. (Doc. # 31). The underlying Motions have been fully briefed (Docs. # 29, 32, 33, 35, and 36), and are ripe for review. For the reasons stated herein, Plaintiff's Motion to Remand (Doc. # 23) is **granted**. As such PPOA's Motion to Dismiss (Doc. # 27) is **denied** as moot and Plaintiff's Motion to Stay (Doc. # 31) is **denied** as moot.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

This case stems directly from a 2015 civil action in the Eastern District of Kentucky. *Bentley v. Paintsville Hosp. Co., LLC, et al.*, No. 7:15-cv-97. There, Plaintiff Adams-Rosales sued Highlands Hospital Corporation, Consolidated Health Systems, Inc., Dr. Terry D. Hall, Paintsville Hospital Company, LLC, Dr. Thomas B. Styer, and Whitaker National Corporation for a number of claims, including medical negligence, negligent hiring, supervision, and retention, negligent infliction of emotional distress, and violations

1

of both the Kentucky Consumer Protection Act and the Emergency Medical Treatment and Labor Act.  *Id.* ECF Nos. 1-2 and 1-3.  The claims in *Bentley* arose out of Adams-Rosales, formerly Bentley, visiting Paintsville Hospital Company complaining of severe lower back pain and inability to walk due to numbness, pain, tingling, and weakness in her legs.  *Id.* ECF No. 1-2 ¶¶ 30-31.  Adams-Rosales argues that Dr. Styer, the physician she consulted with, should have recognized that she "was undergoing a serious and potentially life-threatening neurological event."  *Id.* ¶ 31.  Instead of ordering a MRI Dr. Styer ordered a routine lumbar CT scan and sent Adams-Rosales home.  *Id.* ¶¶ 32-33.  According to Adams-Rosales, due to Dr. Styer's mistake, she is permanently paralyzed from the waist down.  *Id.* ¶ 39.

The *Bentley* lawsuit was eventually settled in February of 2017.  *Id.* ECF No. 678.  After the adjudication of a Motion to Enforce Settlement, *id.* ECF No. 682, *Bentley* was dismissed with prejudice and stricken from the court's docket.  *Id.* ECF No. 695.

Defendants in the current litigation, Dr. Styer and Whitaker National Corporation ("Whitaker"), were insured by Defendant ProAssurance Specialty Insurance Company, Inc. ("ProAssurance").  (Doc. # 1-1 at ¶ 16).  Defendant NES America, Inc. in turn was the policyholder of the ProAssurance policy which "purported to provide coverage" for the claims arising out of the underlying action in *Bentley*.  (*Id.* ¶ 17).  During the defense and settlement of the *Bentley* action, Defendant Riverdale Claims Management, LLC ("Riverdale") was the third-party administrator or claims handler for the claims asserted against Dr. Styer and Whitaker while Defendant Michael Richards was the claims adjuster.  (*Id.* ¶¶ 18-19).  ProAssurance, Riverdale, and Richards assigned Phillips,

Parker, Orberson & Arnett, P.L.C. ("PPOA") as Dr. Styer and Whitaker's counsel for the underlying litigation. (*Id.* ¶¶ 32-33).

According to Plaintiff, these Defendants communicated to Adams-Rosales throughout the *Bentley* litigation that the Policy covering Dr. Styer and Whitaker was a "wasting" policy. (*Id.* ¶ 22). A "wasting" policy's defining characteristic is that the total coverage available to be paid out declined as funds were expended during the litigation process. (*Id.*). The Policy's terms provided that the policyholder "was responsible for $1,000,000.00 in costs prior to the policy becoming effective, and that the $3,000,000.00 condition precedent was an aggregate condition precedent" and "the limit of the liability include[ed] both defense costs and available settlement funds." (*Id.* ¶ 37). During settlement negotiations in *Bentley*, Plaintiff alleges that Defendants ProAssurance, Riverdale, and Richards, through PPOA, falsely represented to Plaintiff that the Policy's limit was $1,000,000.00, which included the "wasting provision." (*Id.* ¶ 38). At that point in October of 2016, Defendants allegedly informed Plaintiff that $261,241.00 of the Policy proceeds had been spent on defense fees and costs, which only left $738,759.00 available for settlement. (*Id.*). In December of 2016, Defendants allegedly informed Plaintiff that due to defense costs and fees, only $650,000.00 of the Policy proceeds were still available for settlement. (*Id.* ¶ 39). Based on these misrepresentations, Adams-Rosales settled her claims and the Policy proceeds were never used to satisfy the settlement of her claims. (*Id.* ¶¶ 40-41). Adams-Rosales states that she would not have settled her underlying claims if she knew the Policy's limits were being misrepresented. (*Id.* ¶ 41).

## II.   ANALYSIS

### A.   Standard of Review

Under 28 U.S.C. § 1441(a), "any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending." Removal statutes are to be narrowly construed as they were "adopted in order to restrict rather than expand the scope of removal from the state courts." *First Nat'l Bank of Pulaski v. Curry*, 301 F.3d 456, 464 (6th Cir. 2002). Accordingly, "all doubts as to the propriety of removal are resolved in favor of remand." *Coyne ex rel. Ohio v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999).

Here, removing Defendants argue that this Court has jurisdiction over the matter due to a venue selection provision in the settlement agreement *or* pursuant to diversity jurisdiction under 28 U.S.C. § 1332(a)(1). (Doc. # 1 at 5).

### B.   Enforcement of Settlement Agreement

In their Notice of Removal, the NES Defendants argue that the terms of the settlement agreement between Defendants and Adams-Rosales proscribe "that jurisdiction over the release and settlement agreement would remain with the United States District Court for the Eastern District of Kentucky." (Doc. # 1 at 3); (*See also* Doc. # 5 at 2). However, for a federal court to retain jurisdiction over a dispute, the court must proscribe in the dismissal order that the parties must comply with terms of the settlement agreement, or explicitly acknowledge that the court retains jurisdiction over the settlement. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994). This

4

power stems from Rule 41(a)(2) which allows a court to dismiss an action "on terms that the court considers proper."  If the court did not retain jurisdiction, it is only proper to enforce such agreement if "there is some independent basis for federal jurisdiction." *Harney v. Walden*, No. 10-200, 2012 WL 4329281, at *1 (E.D. Ky. Sept. 19, 2012) (quoting *Kokkonen*, 511 U.S. at 382).  The only other permissible way for a court to retain jurisdiction is "if the parties agree."  *Kokkonen*, 511 U.S. at 382.

Unfortunately for removing Defendants, then-District Judge Amul Thapar explicitly stated in his dismissal order that "[t]he Court retains jurisdiction over this case *until* Friday, March 31, 2017.  After Friday, March 31, 2017, *the Court will no longer have jurisdiction over the case*." *Bentley v. Paintsville Hosp. Co., LLC, et al.*, 7:15-cv-97, ECF No. 679 at 1 (emphasis added).  While the case was initially restored under the terms of that order when Adams-Rosales, formerly Bentley, moved to enforce the settlement, it was promptly dismissed by District Judge Karen Caldwell after that motion was adjudicated.  *Id.* ECF No. 695.  That order dismissed the case with prejudice, struck the case from the active docket, and did not provide for further jurisdiction to be exercised by the Eastern District of Kentucky.  *Id.*  While the Supreme Court in *Kokkonen* explained that a court "is authorized" to retain jurisdiction "if the parties agree[,]" Defendants in the current matter were not all parties to the original settlement agreement.  511 U.S. at 382.  In fact, the majority of Defendants in the current lawsuit were not parties involved in the previous settlement, including ProAssurance, Riverdale, Richards, and PPOA.  (*See generally* Docs. # 1-1 ¶ 42 and 5).  The only Defendants that were parties to the original settlement agreement were Dr. Styer, Whitaker, and NES Healthcare.  (Doc. # 5).  In any event, the settlement agreement only specifically releases Adams-Rosales's claims against Dr.

5

Styer, Whitaker, and NES Healthcare for her injuries related to Dr. Styer's alleged malpractice. (*Id.*). Similarly, while the parties may have agreed to retain jurisdiction then, they disagree now. Therefore, the terms of the settlement agreement alone do not bestow this court with jurisdiction unless there is an independent basis to exercise such jurisdiction.

      **C.**     **Diversity Jurisdiction and Fraudulent Joinder**

Defendants contend that removal is permitted under 28 U.S.C. § 1332. (Doc. # 1 at 1). Section 1332 confers on district courts "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, [] and is between citizens of different states." Section 1332 requires *complete* diversity between a plaintiff and all defendants.[1] *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 492 (6th Cir. 1999). In other words, "[d]iversity jurisdiction attaches only when all parties on one side of the litigation are of a different citizenship from all parties on the other side of the litigation." *Id.* (quoting *SHR Ltd. P'ship v. Braun*, 888 F.2d 455, 456 (6th Cir. 1989)).

Here, Plaintiff is a citizen of Kentucky. (Doc. # 1-1 ¶ 1). Defendant PPOA, with its principal place of business in Louisville, Kentucky, also resides in Kentucky for diversity purposes. (*Id.* ¶ 12). All other Defendants are citizens of different states than Plaintiff. (*See id.* ¶¶ 2-11). Based on the complete diversity rule, if PPOA is a proper party to this action, then Plaintiff's Motion to Remand must be granted.

---

[1]     The amount in controversy requirement is not discussed in Plaintiff's Motion to Remand, so the Court assumes *arguendo* based on the information available that this requirement has been met. (*See generally* Doc. # 23-1).

6

While Plaintiff argues that PPOA is a proper party (Doc. # 23-1 at 8-25), Defendants argue that PPOA has been fraudulently joined in order to defeat complete diversity. (Doc. # 29 at 5-23). "[F]raudulent joinder of non-diverse defendants will not defeat removal on diversity grounds." *Coyne*, 183 F.3d at 493. The removing party has the burden of presenting "sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Id.* The relevant question "is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved." *Alexander v. Electr. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994). This test has been characterized as "more lenient than [] the analysis applicable to a Rule 12(b)(6) motion to dismiss." *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 433 (6th Cir. 2012). "[A]ll doubts about the propriety of removal are resolved in favor of remand." *Coyne*, 183 F.3d at 493.

Based on the record available to the Court, it finds that Plaintiff is able to establish a cause of action against PPOA, at least for the purpose of defeating Defendants' allegation of fraudulent joinder. While Plaintiff has since filed an Amended Complaint (Doc. # 19), the operative Complaint is the one filed *at the time of the removal*. *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 210 (6th Cir. 2004); *see also Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939); *Hagyard-Davidson-McGee Assocs., PLLC v. Fed. Ins. Co.*, No. 5:20-cv-171, 2021 WL 4130504, at *3 (E.D. Ky. Sept. 9, 2021) ("In this case, since the Amended Complaint was filed after Removal, the Original Complaint is operative. The Court, therefore, will not consider the additional claims brought against [] Defendants nor the clarifying facts detailed in the Amended Complaint."). In the original Complaint,

7

Plaintiff asserts a single cause of action against PPOA—negligent misrepresentation. (Doc. # 1-1 ¶¶ 75-84).

Defendants argue that this claim against PPOA is time-barred based on Kentucky's one-year statute of limitations on claims arising out of professional services, Ky. Rev. Stat. § 413.245.  (Doc. # 29 at 11).  Because the settlement negotiations occurred largely in late 2016 through early 2017, Defendants argue that the statute of limitations bars Plaintiff's claim against PPOA which was not filed until October of 2021. (*See* Doc. # 1-1 at 1).  Plaintiff alternatively argues that the statute of limitations is an affirmative defense and cannot be asserted at this stage in the proceedings to defeat the joinder of PPOA, especially by the removing-Defendants instead of PPOA.  (Doc. # 23-1 at 18-20).  Plaintiff also argues that the one-year statute of limitations is not operative, instead a five-year statute of limitations applies as this is a negligent misrepresentation claim based on Ky. Rev. Stat. § 413.120(6).  (*Id.* at 20-23).

The Sixth Circuit has yet to rule on whether removing-defendants may establish fraudulent joinder by raising an affirmative defense premised on the statute of limitations. *See Newsome v. Bayer Corp.*, No. 7:17-CV-57, 2018 WL 1906103, at *4 (E.D. Ky. April 23, 2018).  However, "the statute of limitations is an affirmative defense that the defendants must prove themselves.  So the defendants must come forward with affirmative evidence establishing that the complaint is untimely."  *Williams v. Altman, McGuire, McClellan & Crum, P.S.C.*, No. 12-131, 2013 WL 28378, at *5 (E.D. Ky. Jan. 2, 2013) (internal citations omitted).  Therefore, if Defendants do not meet the burden of establishing the affirmative defense, then "the Court need not resolve the issue of whether

it is even proper to consider an affirmative defense at this stage of the proceedings." *Id.* at *4 n.2.

First, this Court must determine whether the one-year or five-year statute of limitations applies. Ky. Rev. Stat. § 413.245 establishes a one-year statute of limitation for "professional service malpractice . . . arising out of any act or omission in rendering, or failing to render, professional services." Alternatively, Ky. Rev. Stat. § 413.120(6) proscribes a five-year statute of limitations for "an action for an injury to the rights of the plaintiff, not arising on contract and not otherwise enumerated." Plaintiff relies on *Mid States Steel Products Co. v. University of Kentucky* to establish the appropriateness of the five-year statute of limitations. Nos. 2003-CA-2509, 2004-CA-2694, and 2004-CA-1434, 2006 WL 1195914 (Ky. Ct. App. May 5, 2006). There, the Kentucky Court of Appeals held that "[a] negligent misrepresentation claim is not equivalent to a professional malpractice claim . . . Under a negligent misrepresentation theory, liability is not based on professional duty; instead, liability is based on an independent duty to avoid misstatements intended to reduce reliance." *Id.* at *12 (quoting *Safeway Managing Gen. Agency v. Clark & Gamble*, 985 S.W.2d 166, 169 (Tex. Ct. App. 1998)). Defendants instead rely on *Abel v. Austin*, 411 S.W.3d 728, 738 (Ky. 2013), which held that "KRS 413.245 is the *exclusive* statute of limitations governing claims of attorney malpractice." (emphasis in original).

Unfortunately for Plaintiff, the distinction between these two statutes was made clear by the Kentucky Supreme Court in *Seiller Waterman, LLC v. RLB Properties, Ltd*. 610 S.W.3d 188 (Ky. 2020). In *Seiller Waterman*, the Kentucky Supreme Court explained that the Supreme Court in *Abel* correctly concluded that Ky. Rev. Stat. § 413.245

9

exclusively governs all "civil actions brought against providers of professional services, such as attorneys, for injury arising out of that service." *Id.* at 205 (quoting *Abel*, 411 S.W.3d at 738). The Kentucky Supreme Court went on to explicitly hold that Ky. Rev. Stat. § 413.245 "applies to *any* civil action against an attorney arising out of any act or omission in rendering or failing to render professional services without regard to the identity of the claimant[,]" including a nonclient. *Id.* Therefore, a one-year statute of limitations applies to Plaintiff's claim against PPOA.

Defendants have explained that Plaintiff's own Complaint alleges that PPOA negligently represented that less than $1,000,000 of the policy proceeds were available for settlement due to the Policy's "wasting" provisions in October and December of 2016. (Docs. # 1-1 ¶¶ 38-39, 81 and 29 at 10). According to Defendants, the alleged negligent misrepresentations "all arose prior to the execution of the settlement agreement on March 21, 2017." (Doc. # 29 at 10). Based on this timeline, Plaintiff would have had to file suit against PPOA by March 21, 2018, at the latest. Instead, Plaintiff filed suit on October 21, 2021. (Doc. # 1-1 at 1). However, Plaintiff argues that Kentucky's discovery rule shields her from Defendants' statute of limitations defense, for now. (Doc. # 33 at 7-8). Kentucky's discovery rule provides that "a cause of action will not accrue until the plaintiff discovers (or in the exercise of reasonable diligence should have discovered) not only that he has been injured, but also that this injury may have been caused by the defendant's conduct." *Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 60 (Ky. 2010). Plaintiff contends she did not discover her claim against PPOA until January 2021 "when PPOA failed to furnish any explanation for ProAssurance's representation that the Underlying Claims were not submitted to it for payment under the Policy." (Doc. # 23-1 at 22).

10

In the context of fraudulent joinder, a defendant has the burden of presenting "sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law."  *Coyne*, 183 F.3d at 493.  Here, there is a dispute as to when Plaintiff should have discovered her claim against PPOA.  Defendants argue that she should have discovered her claim when she read the relevant insurance Policy and Plaintiff argues that she could not have discovered it until PPOA refused to explain why the claims were not submitted for payment under the Policy.  Therefore, there is arguably a reasonable dispute as to when Plaintiff's claim should have been discovered.  Because of this, it is possible that Plaintiff's claim is timely because it was discovered in January 2021 and the lawsuit was filed in October of 2021.  (Doc. # 1-1 at 1).

Even though Plaintiff's claim is arguably timely, the Court must still inquire into "whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved."  *Alexander*, 13 F.3d at 949.  Defendants argue that Plaintiff's claim is a non-starter, because as laid out in *Seiller Waterman*, negligence claims are properly dismissed when the defendant does not owe the plaintiff a duty.  (Doc. # 29 at 14-15).  Defendants reason that Plaintiff cannot assert a claim against PPOA because an opposing party "is not entitled to assert a negligence claim against the legal counsel who represented an opposing party in prior litigation, because no duty flows from that counsel to their client's adversary."  (*Id.* at 14) (quoting *Seiller Waterman*, 610 S.W.3d at 201).  However, negligent misrepresentation differs from a pure negligence claim because it "defines an independent duty" to not "supply false information."  *Presnell Const. Managers, Inc. v EH Const., LLC*, 134 S.W.3d 575, 582 (Ky. 2004).  A party is

11

liable under the Restatement (Second) of Torts § 552 for negligent misrepresentation when "[o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."

Other courts have refused to guard attorneys from negligent misrepresentation suits if they supplied false information in the course of their profession.  For example, in *Greycas, Inc. v. Proud*, Greycas agreed to loan a farmer, Wayne Crawford, money secured by farm machinery if the farmer provided a letter from counsel asserting that there were no prior liens on the farm machinery.  826 F.2d 1560, 1561-62 (7th Cir. 1987).  Crawford obtained the letter from his brother-in-law, attorney Theodore Proud, to that effect.  *Id.*  Thereafter, Crawford defaulted on the loan and Greycas only recovered a small portion of the loan because other creditors had prior liens on the equipment.  *Id.* at 1562.  There, the Seventh Circuit determined that Proud, in his capacity as an attorney was liable for negligent misrepresentation for "suppl[ying] information (or rather misinformation) to Greycas that was intended to guide Greycas in commercial dealings with Crawford."  *Id.* at 1565.  *See also Fire Ins. Exchange v. Bell by Bell*, 643 N.E.2d 310, 313 (Ind. 1994) (holding that a plaintiff and plaintiff's counsel had a right to rely upon opposing counsel's representations regarding the policy limits in the context of settlement and therefore could sue opposing counsel for fraudulent misrepresentation); Restatement (Third) of the Law Governing Lawyers § 51, comment c (2000) ("A lawyer representing a party in litigation has no duty of care to the opposing party under this Section, and hence

no liability for lack of care, *except in unusual situations such as when a litigant is provided an opinion letter from opposing counsel as part of a settlement.*") (emphasis added); *Slotkin v. Citizens Cas. Co. of N.Y.*, 614 F.2d 301, 312 (finding that a plaintiff who has been induced to settle a claim due to a misrepresentation may recover damages).

Plaintiff alleges that PPOA negligently misrepresented the relevant Policy which in turn induced Plaintiff into settling her claim for less than she otherwise would have. The Supreme Court of Kentucky has yet to rule on whether negligent or fraudulent misrepresentations by lawyers in the context of settlement may be the basis for liability in a situation such as Plaintiff's. Therefore, there "is arguably a reasonable basis for predicting that the state law *might* impose liability on the facts involved." *Alexander*, 13 F.3d at 949 (emphasis added). This type of decision will be left in the capable hands of the Floyd County Circuit Court, and as such, Plaintiff's Motion to Remand is granted.

### III.   CONCLUSION

Accordingly, **IT IS ORDERED** that:

(1)   Plaintiff Adams-Rosales's Motion to Remand (Doc. # 23) is **granted**;

(2)   Plaintiff Adams-Rosales's Motion to Stay (Doc. # 31) is **denied as moot**;

(3)   Defendant PPOA's Motion to Dismiss (Doc. # 27) is **denied as moot**.

This 18th day of April, 2022.



Signed By:
David L. Bunning   DB
United States District Judge

M:\DATA\ORDERS\PikeCivil\2021\21-94 Order on Motion to Remand.docx